This case sums up to that 16-09-60, the people of the state of Illinois, thank you for your affidavit to the board of John Swenson, the defendant. Arguing on behalf of the defendant's defendant, Ms. Erin S. Johnson. Arguing on behalf of the defendant's affidavit, Ms. Mary Beth Burns. Ms. Johnson. Good morning, your honors, counsel, may it please the court. My name is Erin Johnson with the Office of State Appellate Defender, and I represent the defendant appellant in this case, Mr. Rory Swenson. Now this case comes back following Mr. Swenson's conviction for Class C disorderly conduct. The issue in this case is the First Amendment right to free speech. Because Mr. Swenson's conviction was based only on his engaging in a conversation which did not contain any threats, all of his conduct was protected speech, and his conviction cannot stand under the First Amendment. The First Amendment right to free speech prevents criminalizing unpopular, unpleasant, unreasonable, or even upsetting speech. Only certain narrow categories of unprotected speech, such as obscene speech, threats, or fighting words, may be criminalized. But because Mr. Swenson's conversation in this case does not fit into any of those narrow, unprotected categories, his conversation cannot be criminalized. The disorderly conduct statute must be interpreted in accordance with the First Amendment. And when we interpret the disorderly conduct statute in accordance with the First Amendment, no crime is committed here, and Mr. Swenson's conviction cannot stand. In this case, Mr. Swenson called Keith Country Day School to inquire about enrolling his 8-year-old son. He left a message for the school administration, and he received a call back. Ms. Prestoka, the school administrator, called him back, and they had a conversation. During that conversation, Mr. Swenson asked questions about the security of the school and what the school's protocol would be in the event of a school shooting. After he learned that the school didn't take security measures that he thought were appropriate, he did make statements about statistics of how they could improve their security in the future if they had things like armed guards or teachers who had guns. And he did make a statement that if measures were not taken to protect children, the blood of those children, if they were harmed, would be on the hands of those who failed to act. However, Mr. Swenson never yelled. He never said he had a gun. He never said he was coming to school with a gun. There were no threats. The trial court in this case found there were no threats. It found Mr. Swenson not guilty of transmitting a threat or attempting to transmit a threat to the school. And the state's witness, Ms. Christopha herself, testified that she was not threatened by Mr. Swenson. That's an R-94. It says she was not threatened. So here, where there were no threats, he's just inquiring about the school's security, and they're just having a conversation where there's no yelling, there's no other conduct. There can be no criminality on that basis. And, again, as I've outlined in my brief, the only categories of speech that are able to be criminalized are those narrow, unprotected categories. And here, as I said, there's no threats. There's no fighting words. And in the briefs, it's outlined that fighting words are personally abusive epithets that are likely to incite an immediate breach of the peace. Here, Mr. Swenson is called back by the school. There's no immediacy there. They're just having a conversation. And, in fact, the records report that he was on the phone with the school when the police showed up at his house, and he was cooperative with the police and said, yes, I was on the phone with the school asking about security. So it's clearly not fighting words. It's clearly not lewd or obscene speech. It's not threats. There's nothing in this conduct that can form the basis of a criminal conviction. And because the entirety of Mr. Swenson's conduct was protected speech, this court cannot allow his conviction to stand. What's the criteria or the benchmark that we're supposed to use relative to whether he knew or should have known that he would cause a breach of the peace? Well, so, in my brief, I did argue that this is akin to obstructing, because in People v. Kotlinski, which is in my brief, it's a Second District case, this court talked about the fact that where the offense embraces a wide range of activities and it's defined in terms of a result, in Kotlinski, breaching the peace, but here the result is, sorry, in Kotlinski, obstructing an officer, here, breaching the peace. Where it's defined in terms of results, I would argue that he must know that he's going to cause a breach of the peace. But even if you use the lesser standard that the State has suggested from Diomedes and Raby, that he needs to know that he's speaking, but as to whether or not it will cause a breach of the peace, he only should have known that it caused a breach of the peace, we still don't have that here. Nothing Mr. Swenson did indicates that he should have known he would cause a breach of the peace. Again, based on the facts here, he's left a message with the school, he's called back by the administrator, and they engage in a 15 to 20 minute conversation where there's no yelling, there's no threats, he's asking about school security, there's nothing in the facts that indicate he should have known he was causing a breach of the peace. So the State didn't prove the knowingly standard here, even under that lesser should have known standard. Is it a reasonable person, is the benchmark relative to whether he knew or should have known? Or is a reasonable person relating to whether or not it is reasonable to determine that a breach of the peace occurred? Can I clarify your question? So you're asking if the reasonable person applies to the speaker or the listener, is that what we're asking? Well, when you talk about he knew, you're talking about a scenario that exists in this real universe. But when you said he should know, that's a hypothetical, and it's got to be measured against something. So is it measured against his own IQ or is it measured against a reasonable person or a jurist? What is it supposed to be measured against for his purposes of knowing? Is he supposed to get the advantage of ignorance or is he going to get the disadvantage of intellectual superiority and supremacy? No, I think from Diane Nady's, at least, it's the reasonable person who's engaging in this conduct. Would the reasonable person know they were causing a breach of the peace? And since I've never seen a breach of the peace where somebody with a flashing red sign walked up and down in front of me saying, breach of peace, breach of peace, it's a metaphysical conclusion or assumption or judgment based upon the totality of the circumstances. So the question is whether or not a breach of the peace occurs should be measured by what a reasonable person would conclude, or is it supposed to be by what a police officer believes or by what you believe? By what a reasonable person would conclude. But again, I would reiterate that even if we say it has to be what a reasonable person should have known in this case. And therefore, if it's a reasonable person, it's not a question of whether the administrator was alarmed, even though there's some ambiguity as to whether or not she thought when asked the question, was she alarmed personally for her own personal safety or was she alarmed by the totality of the circumstances insofar as whether or not the school was in jeopardy. And since she was related to being an agent for that entity, that maybe she might be alarmed because of her relationship with the school. Well, right, but it doesn't matter whether or not. At the end of the day, it doesn't matter if she was alarmed or disturbed. It doesn't matter if she called the police. It doesn't matter if the school went on a soft lockdown. That's all results. But I could call someone and just say, you know, just because I call someone, if I say something that any reasonable person would understand as a political statement, but someone takes it the wrong way, it can't be disorderly conduct because it's taken the wrong way by the listener. We have to look at the reasonable person who's speaking these words, should they have known they were causing a breach of the peace. And we look at the facts in this case. Mr. Swenson is calling the school, and he's actually called back, so it's not even as aggressive as calling the school. He's called back. Well, he was found not guilty of phone harassment because he was called back. He was called back. They engage in a conversation that, by the testimony, lasts 15 to 20 minutes. There's no yelling. There's no threats of any kind. He's asking about do you have this, do you have that. Do you have bulletproof glass? Do you have armed teachers? When they say no, he's saying, well, really, you should because it reduces the casualties. And he's giving his opinion about what reasonable school security is. No reasonable person should have known that they would cause a breach of the peace by having a phone conversation about school security. Regardless of the words used. And I think that goes back to my first point, which is, at the end of the day, regardless of the outcome here, regardless of what Ms. Christopher felt, what she thought, what the police thought, what they did when they came to his house, this is just a conversation that's just words, thoughts being expressed. There's no threats. It can't be criminalized. If I understand your argument, you're saying that as a matter of law this wasn't actionable. Right. I'm saying even if you take all of the state's evidence as true, they didn't prove a criminal action here. Because speech cannot be criminalized under the First Amendment unless it is a threat. And, again, here the trial court found there's no threat, and the state's witness testified there's no threat. And if we look at what was said, there's no threat. He's inquiring about the security. He's expressing his opinion about the, I guess, inadequacy of the security and expressing concern. But, again, it's all just expression. It falls squarely under our right to free speech. I mean, the right to free speech means nothing if you can't express your opinion about what would be a safe place for your child to go to school and express that to the school who can do something about it. It does not matter whether his statements are unreasonable. No. You can be unreasonable. Under the First Amendment, you can say something unreasonable. That's your right to free speech. You can't say something threatening. You can't say something like fire in a crowded theater where you're causing an immediate stampede. But you can say something unreasonable. It would be no different than if you called. Is a threat subject to interpretation? Words that may or may not constitute a threat, is that subject to interpretation? And if so, is it subjective or a reasonable person? Well, it has to be a reasonable person always. But here, it was found that it wasn't a threat. And I think even if you look at the words, even if you take what Ms. Khrushcheva said, she believed she said, I know there was a discrepancy, but you take what she believed she said, the only part that even approaches something concerning here, when she said, he said, if something happens to these children, their blood is on your hands. That's not a threat. If anything, that's a political statement. It's no different than if I called a charity, let's say, like the Girl Scouts. And I wanted to know, where do you give your money? Because I'm going to give you a donation. And they say, oh, we give our money to Planned Parenthood. And I said, well, then the blood of unborn babies is on your hands. That's a political statement. I'm saying that because of what you're doing or not doing, and something bad happens, I think that's your fault. It's not a threat, though. It's an expression of a political opinion. Why do you keep saying political? Why isn't it moral or ethical? Well, I think it doesn't matter. I mean, it could be either. I guess by comparison, I guess it makes an easy comparison to some of that was the first thing that came to my head of what would be an easy comparison where someone might say something like the blood is on your hands. So that's my hypothetical that I think illustrates my point. But it could be an ethical opinion. The point is you're allowed to express your opinion. It can be an unreasonable opinion. It can be one we don't agree with. We can wish you chose different words. But as long as it's not a threat, it can't be criminalized. Are you saying overt threat or can it be an implied threat? Well, there is case law that there can be implicit threats. But here there wasn't an implicit threat. And the trial court found there wasn't an implicit threat because they found not only was it not a threat, it wasn't even an attempt at a threat. So, I mean, we don't have a threat here. And the witness, the state's witness said, no, he never threatened me. He never said he had a gun. He never said he was coming to the school with a gun. None of those things. So is your argument basically that these are inconsistent, I'd call them, verdicts after a bench trial? Well, they are inconsistent verdicts. But, I mean, so, yes. But ultimately the reversal is because there's nothing proven here. I mean, like, again, it's a reasonable doubt argument because even if you take everything the state put out as evidence as true, it didn't prove a crime beyond a reasonable doubt. And that's the issue here. And on this record, on these facts, and based on the First Amendment, Mr. Swenson's conviction cannot stand. So if there's no other questions, I respectfully ask this court reverse Mr. Swenson's conviction for disorderly conduct. Thank you. Thank you. You'll have an opportunity to make rebuttal. Thank you. Ms. Burns, you may proceed. Good morning, Your Honors. Good morning. May it please the Court, my name is Mary Beth Burns, and I represent the people of the state of Illinois. We come before you this morning to respectfully ask this court to affirm the defendant's conviction for disorderly conduct. Initially, I strongly disagree with the notion that there was nothing threatening in the phone call. Whether we consider it an implicit threat, as Ms. Castoya apparently did not consider it a direct threat. The surrounding circumstances fit the elements of the offense. The defendant knowingly committed an act in an unreasonable manner that alarmed or disturbed or provoked the peace.  The court believed that the school acted very reasonably in calling the police and inquiring. The trial court was surprised they didn't call out a SWAT team. The surrounding circumstances of the statements that the defendant made to Ms. Castoya were extremely disturbing. He talked about, but are they a violation of the First Amendment? I'll grant you they were very disturbing statements. The trial court properly characterized them as the proverbial yelling fire in a crowded theater. Or yelling a mass shooter in a school. I'm sorry? Or yelling a mass shooter is in the school. Precisely. And the call included the defendant reminding the woman on the receiving end of the statements that there had just been a mass shooting less than a week before. It involved discussions of children dying on pillows. It involved some things that were genuinely security minded, like were there bulletproof doors and bulletproof glasses in the windows. But the rest of it, to call it a discussion about school security, is clearly sanitizing the nature of the actual call. The comments were extremely disturbing and any rational person within the surrounding circumstances would have been disturbed and it did in fact cause a breach of the peace in that the police were called. And again, the trial court's characterizations I thought were interesting. The trial court analogized it to the classic crying fire in the crowded theater and said he was surprised that they had not called a SWAT team. The nature of the conversation would be disturbing to anyone. But this is someone who's in the administration of a grammar school that has 200 children present, and the defendant is talking about his familiarity with the surrounding woods, which is why she was concerned that it was someone who actually was on the campus. The First Amendment does not protect this type of speech, and the statute requires proof that was provided. I think people can call schools and talk to people in the schools. Absolutely. When you say this type, could you be a little bit more specific as to what would be allowed? Again, if this were, as the defense characterized it, a discussion about school security, just about a year ago in Florida there was a terrible school shooting where 17 people were killed. If I were a parent at a high school in this area, I could totally imagine calling the school and saying, you heard about Parkland. What steps are you taking to prepare for something like this? If I was talking to my cousin who lives in Schaumburg, does Schaumburg High School, which is not far from the police department, have ongoing security in the parking lots? Does the police department come through several times a day to make sure there are no intruders? I know in the city of Chicago some of the schools have actually physical presence of police officers and metal detectors at doors. I think inquiries about such matters would be entirely appropriate to a discussion about school security. I think talking about blood being on one's hands and children dying on pillows is a little harrowing. Again, I'm sorry to keep my mouth brief. I don't know the record as well as I should. I'm sorry to harp on, when I first read this, my first thought was, we're crying fire in the crowded theater. The trial court made the exact same analogy when I was reading it. But I think that what the statute is trying to prohibit is action that is unreasonable that draws the response of breaching the peace. In this type of situation, this wasn't simply a matter of a discussion about school security. It was for the children to be upset if they see the shooter pointing a gun at their teacher. Do you understand that 80% of shooters can, in fact, successfully hit targets? What else was in here? Does the fact that the police were called and the police made an investigation, is that proof? That it caused the breach of the peace, or is that merely evidence? If it's evidence, is it ramifacia, or is it just an element? I think it's evidence of the surrounding circumstances. And I think the discussion we had with counsel earlier about what is our standard, our standard is what does a reasonable person do within certain surrounding circumstances. Here this was a person who had a discussion that was perhaps intended by him to be reasonable, but in fact under a reasonable person standard was not reasonable. And it was with an administrator in a school that had 200 grammar school children present. So I think when this court was earlier discussing what is our standard, our standard is what does a reasonable person do within certain surrounding circumstances. The defendant's behavior here was unreasonable. In any circumstance, it would be unreasonable to make similar statements if he's calling an office to find out where his wife worked and did it have security, if you started talking about sacrificial blood. But I think that it was rendered even less reasonable because it was a grammar school. And again, I think the trial court properly characterized it. This was the analogy to the yelling fire in the crowded school, or as Your Honor said, it was yelling shooter in a school. This was entirely unreasonable. And the trial court I think did not give an inconsistent verdict. The trial court parsed the three counts and found the defendant was guilty of this count, again, based on the elements of the offense. Your Honor, seven more questions? No. Thank you. Good morning. Ms. Johnson, you may proceed. I think it's important to clarify from what the State's argument. You're allowed to be unreasonable in your speech. Disorderly conduct says you cannot knowingly act unreasonably in a manner that alarms and disturbs another person and provokes the breach of the peace. However, what the case law tells us is where disorderly conduct is based only on speech, it cannot just be unreasonable. It has to be an unprotected category of speech under the First Amendment, which means it has to be something threatening. We don't have any threats here. And the trial court found there was no threats. The State's witness said there were no threats. And ultimately, even if you look at the words that were used, if something bad happens, the blood will be on your hands, that's not a threat. That's a statement of opinion, that if you fail to act to protect these children and something bad happens, that's your fault. That's not a threat at all. So if he makes the statement, if you don't do something, their blood is on your hands. If they don't respond and don't call the police and don't have a soft lockdown and something happens, then the blood of the children is on their hands. So what are they supposed to do? Are they supposed to discount his statement because what he said was or might be true if, in fact, they paid no attention to what he said? Well, again, ultimately, you're looking at this as a result of the results. If the police are called, it cannot be that if the police are called, therefore there was a disorderly conduct. That's not how this works. It has to be what a reasonable person believes when they're taking the action that Mr. Swenson took.  Were they communicating a threat that they would expect would cause a breach of the peace? Here, there's no way that a reasonable person in Mr. Swenson's shoes would believe he was communicating a threat. Would he believe he was communicating a statement such as a shooter in a school, a fire in a theater? No. And I think that that's an unfair characterization. I think that's where the trial court is very inconsistent. They say there's no threat, and then they said there was fire in a theater. It's not fire in a theater. It's not a mass shooter in a school because the record makes it clear. It was asked multiple times, did he say he had a gun? No, he didn't say he had a gun. Did he say he was coming to school with a gun? No, he didn't say that. He never made any statements to indicate that there was anything going to happen at that school. The only thing that happened in the record is that the administrator, he made a comment about the layout of the school, the woods, and she said that made her nervous, and she called the police. So what you're basically saying is if somebody, when they first commence a conversation, says, no matter what I say, you should not take anything I say as a threat, but merely as a philosophical observation on the realities and morals and ethics in life, and then they can say anything they want thereafter, and it's okay. Well, that's not what I'm saying. I'm saying if they don't threaten you thereafter, then they didn't threaten you, and so it's fine. Explain the fact that they may have threatened you or may threaten you in the following conversation. Well, I think that's a different fact scenario we have to determine because if I say it's not a threat but I'm going to kill you, I think we'd have to parse that fact out as whether or not my disclaimer counted. But again, I'm not saying there's a disclaimer here. I'm saying if you look at the words Mr. Swenson used, he never made any threats, and the witness said he wasn't making any threats, and the trial court said he wasn't making any threats. All that happened was he had his discussion, and he did express his pleasure that they didn't have the security he wanted them to have, and he was trying to convince them if you do these things, you would reduce casualties because he gave statistics. Have you ever represented a respondent in an emergency mental commitment proceeding? I'm familiar with them, but no, I've never represented someone in that scenario. The reason why I ask is because I have had some experience both prosecuting, I think possibly defending, and adjudicating them. And some of the things these people say or relate are not threats, but they are very bizarre, and they put you on notice that these people are not normal, and they put you on notice that these people need to be paid attention to and something, some response needs to be made. And if the things they say or think is reality is bizarre enough, it will cause you some serious concern. And so your argument about this isn't a threat to me somewhat misses the mark, because maybe you aren't intending it to be, but what you seem to be saying is as long as it's not a threat, it's not bizarre, it's not unreasonable, it is not something that will cause people alarm and concern. And unfortunately, that hasn't been my experience, so when you talk only about threats, I think you should enlarge your argument a little bit more and suggest that nothing that was said here was bizarre or alarming or something in need of serious consideration, review, and possible reporting to appropriate authorities so this person can be, if they aren't arrested, maybe committed as someone who has some serious reality problems. With respect, Your Honor, I would like to address that in two ways. First, I think, which I was going to get to, is when Ms. Burns talked about the contacts in San Marino just happening, I actually think it's not unreasonable, and Ms. Burns actually said it herself, it's not unreasonable for a parent in this day and age to call a school and ask about school shootings and what is your protocol, because they are concerned. And that's what Mr. Swenson was doing. He's calling because he's concerned, and he actually is trying to convince this school to do better to protect children. But, even if we set that aside, my point still is, we're talking about a criminal conviction here. We're not talking about civil commitment, we're not talking about any of those things. We're talking about what can be criminalized in this country. And in this country, where we have a First Amendment right to free speech, you can't have unreasonable speech criminalized. It doesn't matter if it disturbs someone. I'm not saying the school is wrong for calling the police. They can call the police every day of the week if they want. That's fine. It doesn't mean a crime was committed here, because we can't criminalize speech if it's not threatening. He didn't do anything that fell under the category. All he did was talk. All he did was have a conversation. And where that's all you've done, it can't be criminalized unless it falls under that category of unprotected speech. And here it didn't. And so on that basis, his conviction must be reversed. Any other questions? Thank you. I take the case under advisement. There are no further cases on the call today. The court is adjourned. Thank you.